UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| PROTECTIVE LIFE INSURANCE COMPANY,<br><br>                              Plaintiff,<br><br>v.<br><br>NAZEERA KALLEL, et al.,<br><br>                              Defendants. | Case No.: 22cv1554-LL-BGS<br><br>**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT NAZEERA KALLEL'S MOTION TO DISMISS, OR IN THE ALTERNATIVE, STAY THE ACTION**<br><br>**[ECF No. 17]** |

Before the Court is Defendant Nazeera Kallel's Motion to Dismiss, or in the Alternative, Stay the Action ("Motion"). ECF No. 17. The Court deems this Motion suitable for determination on the papers submitted and without oral argument. See S.D. Cal. CivLR 7.1(d)(1). For the reasons stated below, the Court **GRANTS IN PART** and **DENIES IN PART** Defendant Nazeera Kallel's Motion.

## I. BACKGROUND

### A. Factual Background

On or around November 19, 2003, Plaintiff Protective Life ("Plaintiff" or "Protective Life") issued a life insurance policy, Policy Number PL0802792 (the "Policy"), to Edward Adam Kallel (the "Insured") in the amount of $1,500,000.00. ECF No. 1,

1

Complaint-in-Interpleader ("Compl.") ¶ 8. The Policy stated that "[a] beneficiary is any person named by the Owner in the Company's records to receive the insurance proceeds after the Insured dies." *Id.* ¶ 9. Nazeera Kallel ("Nazeera"), the Insured's wife at the time, was designated as the Policy's primary beneficiary. *Id.* ¶ 8.

On December 30, 2015, a divorce judgment for the dissolution of the Insured and Nazeera's marriage was entered in a family law proceeding. *Id.* at 35–36. The Insured and Nazeera executed a marital settlement agreement ("Agreement") in which the parties agreed that "[e]xcept as provided to the contrary in this Agreement, each party shall become the owner of any policy of life insurance insuring his or her respective life and shall be entitled to any benefits accruing from that ownership, including without limitation the expectancy interest in the insurance proceeds and the right to name the beneficiary of his or her choice." *Id.* at 43–44.

On or around March 6, 2019, a beneficiary change was made on the Insured's online account, which designated Monique Paulene Terrazas ("Terrazas") as the Policy's primary beneficiary. *Id.* ¶ 10. On or around November 11, 2019, another beneficiary change was made on the Insured's online account, which designated "E. Adam Kallel, Trustee of the E. Adam Kallel Trust dated November 6, 2016" as the Policy's primary beneficiary. *Id.* ¶ 11. Terrazas died on June 21, 2020, and the Insured died on March 31, 2022. *Id.* ¶¶ 12–13.

On or around June 16, 2022, Protective Life received written correspondence from attorney J. Brian Watkins ("Watkins"), Successor Trustee to the E. Adam Kallel Trust Dated November 6, 2019, asserting a claim to the Policy proceeds on behalf of the Trust. *Id.* ¶ 14. Further, on or around June 22, 2022, Watkins submitted updated claim forms to Protective Life on behalf of the Trust seeking payment of the Policy proceeds and implying that the Trust was the intended policy beneficiary. *Id.* ¶ 16. However, Protective Life alleges that there was a discrepancy between the Trust date included in the November 11, 2019 beneficiary change (which named "E. Adam Kallel, Trustee of the E. Adam Kallel Trust dated November 6, **2016**" as the Policy's primary beneficiary) and the Trust documents provided by Watkins to Protective Life referencing the "E. Adam Kallel Trust

dated November 6, **2019**" as the Policy's primary beneficiary. *Id.* (emphasis in original). Additionally, on or around August 23, 2022, Protective Life received written correspondence from attorney Christy Lewis-Traut, asserting a claim to the Policy proceeds on behalf of Nazeera. *Id.* ¶ 17.

### B. Procedural Background

#### 1. Interpleader Action

This case is an interpleader action. On October 11, 2022, Plaintiff filed its Complaint-in-Interpleader to determine who is entitled to Edward Adam Kallel's life insurance policy proceeds. *See id.* ¶ 18. The Complaint-in-Interpleader named the following defendants: Nazeera Kallel; the E. Adam Kallel Trust, through its Successor Trustee, J. Brian Watkins (the "Trust"); and the Estate of Edward Adam Kallel, through its Executor, J. Brian Watkins (the "Estate"). *Id.* at ¶¶ 2–4. Plaintiff asked the Court to determine who the Policy proceeds are owed and payable to between the three following scenarios: (1) whether Nazeera Kallel is entitled to the Policy proceeds; (2) whether the "E. Adam Kallel Trust dated November 6, 2019" is the Policy beneficiary, despite the beneficiary of record being the "E. Adam Kallel Trust dated November 6, 2016"; or (3) whether, to the extent the November 11, 2019 beneficiary change is invalid, Monique Pauline Terrazas is the Policy beneficiary. *Id.* ¶ 18.

Plaintiff did not claim any beneficial interest in the Policy's proceeds and was "instead a mere stakeholder" of the Policy proceeds. *Id.* ¶ 21. Further, on February 16, 2023, Plaintiff was ordered to deposit the sum of $1,538,589.04, representing the Policy's principal amount, plus interest, into the Registry of the Court. ECF No. 16.

On March 2, 2023, Defendant Nazeera filed a Motion to Dismiss for Lack of Jurisdiction or in the Alternative, Stay. ECF No. 17; ECF No 17-1, Motion to Dismiss, or in the Alternative, Stay the Action ("Motion" or "Mot."). On March 23, 2023, Defendants the Trust and the Estate filed an opposition to the Motion. ECF No. 18, Opposition ("Oppo."). On the same day, the Trust and the Estate filed a Request for Judicial Notice of State Court Judgment, which requested the Court to take judicial notice of the certified

copy of the judgment of the San Diego County Superior Court that was attached to the Complaint-in-Interpleader.[1] ECF No. 19. The Trust and the Estate also filed an Objection to Exhibit "A" to the Declaration of Daniel R. Gold.[2] ECF No. 20. On March 30, 2023, Defendant Nazeera filed a Reply to the Motion. ECF No. 21, Reply.

## 2. State Court Actions

Nazeera brought two lawsuits in state court after this case was filed. First, on January 9, 2023, Nazeera filed a Request for Order to Adjudicate Omitted Asset, or Alternatively, Set Aside Portions of the Prior Divorce Judgment ("RFO") in the martial dissolution proceeding previously filed in San Diego County Superior Court. ECF No. 17-2, Declaration of Daniel R. Gold in Support of Motion ("Gold Decl.") ¶ 2. The first case is a family law proceeding which requests the state court to "adjudicate whether the mediator in the Kallel dissolution proceeding, inadvertently failed to include the life insurance policy

---

[1] Courts "may take judicial notice of 'matters of public record.'" *Lee v. City of Los Angeles*, 250 F.3d 668, 689 (9th Cir. 2001). "Courts may also consider documents incorporated by reference in the complaint." *See California Parents for Equalization of Educ. Materials v. Torlakson*, 267 F. Supp. 3d 1218, 1224 n.4 (N.D. Cal. 2017) (citing *Coto Settlement v. Eisenberg*, 593 F.3d 1031, 1038 (9th Cir. 2010)). As such, the Court takes judicial notice of the San Diego County Superior Court judgment which was attached to the Complaint-in-Interpleader.

[2] The Trust and the Estate move to strike the Declaration of Daniel R. Gold [ECF No. 17-2]. ECF No. 20. The Trust and the Estate claim that Gold's Declaration was improper because it equates to a second brief and circumvents Federal Rule of Civil Procedure 7 and the Local Rules. *Id.* at 2. Gold's Declaration was filed in support of the Motion and includes counsel's sworn knowledge regarding the state court proceedings and a copy of the RFO. *See* ECF No. 17-2. While declarations are not allowed as pleadings under Rule 7(a), it is common practice for defense counsel to supplement motions and responses with declarations. In particular, the Court notes that the Trust and the Estate's counsel filed their own declaration with exhibits in support of their Opposition. *See* Oppo. at 16–18 (Declaration of Watkins). Further, as stated above, courts may take judicial notice of matters of public record. *See Lee*, 250 F.3d at 689. Therefore, the Trust and the Estate's objection to Gold's Declaration is **DENIED**.

at issue into the Marital Settlement Agreement and resulting Dissolution Judgment" under California Family Code Section 2556. *Id.* ¶ 3. In addition, the first action seeks adjudication of whether "the decedent ex-spouse breached his spousal fiduciary duties, which survive a judgment of dissolution, based upon evidence of his post-judgment representations that he had maintained the life insurance policy for the benefit of" Nazeera under California Family Code Sections 1100(e) and 721(b). *Id.* The San Diego County Superior Court has not entered judgment on this issue. ECF No. 26 ¶ 5; ECF No. 27 ¶ 5. A court ordered mediation is scheduled for January 23, 2024, and the RFO evidentiary hearing is scheduled for August 30, 2024. ECF No. 26 ¶ 5; ECF No. 27 ¶¶ 7–8.

Second, on August 23, 2023, Nazeera filed another state court action regarding the proceeds of the Policy under California Probate Code Sections 850(a) and 21700(a)(4). ECF No. 26 ¶ 6; ECF No. 27 ¶ 6. A preliminary hearing in this probate matter is scheduled for January 24, 2024. ECF No. 26 ¶ 6; ECF No. 27 ¶ 6.

## II.   DISCUSSION

Nazeera moves to dismiss the action for lack of subject matter jurisdiction under the "domestic relations exception," or in the alternative, stay the action pending the outcomes of the state court proceedings. *See* Mot.

### A.   Domestic Relations Exception

Nazeera first argues that this Court should dismiss the action for lack of subject matter jurisdiction under the "domestic relations exception." Nazeera states that the issues in this interpleader action are based entirely upon California family law, and the "resolution of the issues bears upon whether or not the final divorce judgment should be modified." *See id.* at 4. The Trust and the Estate contend that Nazeera should not be permitted a forum of her choice by filing a state court action alleging a defect in the divorce decree after this current action had already been filed. *See* Oppo. at 10.

"Divorce, and the allocation of property incident to a divorce, are longstanding local functions governed by state law." *Evans v. Hepworth*, 433 F. Supp. 3d 1171, 1176 (D. Idaho 2020) (citing *Ankenbrandt v. Richards*, 504 U.S. 689, 706 (1992)). "Federal courts

have accordingly invoked a 'domestic relations exception' to diversity jurisdiction over cases involving domestic relations." *Id.* (citing *Ankenbrandt*, 504 U.S. at 694). The domestic relations exception "divests the federal courts of power to issue divorce, alimony, and child custody decrees." *Ankenbrandt*, 504 U.S. at 703. "[T]he exception covers only 'a narrow range of domestic relations issues.'" *Marshall v. Marshall*, 547 U.S. 293, 307 (2006) (quoting *Ankenbrandt*, 504 U.S. at 701). The Ninth Circuit has stated the domestic relations exception applied only to cases in which "the primary issue concerns the status of parent and child or husband and wife." *Csibi v. Fustos*, 670 F.2d 134, 137 (9th Cir. 1982) (quoting *Buechold v. Ortiz*, 401 F.2d 371, 372 (9th Cir. 1968)). Subsequently, in *Bailey v. MacFarland*, the Ninth Circuit held that the domestic relations exception applies to the issuance or modification of a divorce decree. *Bailey v. MacFarland*, 5 F.4th 1092, 1096–97 (9th Cir. 2021) ("State court is also the appropriate forum for determining whether the decree should be modified").

Nazeera suggests that *Bailey* is directly applicable here because the state court is being asked to "determine whether a divorce decree should be modified." Mot. at 5. In *Bailey*, a plaintiff brought an action against her ex-husband, his son, and his son's company for allegedly failing to repay the plaintiff for loans that plaintiff and her ex-husband had made to the company while they were previously married. *Bailey*, 5 F.4th at 1094. The divorce decree had stipulated that the shares of the company were marital property, and that any income from it would be equally divided between the plaintiff and her ex-husband. *Id.* The Ninth Circuit held that because the plaintiff wanted the federal court to determine whether certain assets had been acquired and held by the defendant ex-husband during the marriage, and then what share of them should have been divided with the defendant ex-husband, the case was "at the core of the domestic relations exception." *Id.* at 1097. However, in *Bailey*, the Ninth Circuit noted that it "decline[s] to adopt the broad version of the [domestic relations] exception embraced by some of [the] sister circuits," such as the Seventh Circuit, which held that the domestic relations exception also divests jurisdiction from a "'penumbra' of cases implicating 'ancillary proceedings . . . that state law would

require be litigated as a tail to the original domestic relations proceeding.'" *Id.* (quoting *Friedlander v. Friedlander*, 149 F.3d 739, 740 (7th Cir. 1998)).

Here, although Defendants Nazeera, the Trust, and the Estate are currently in family law proceedings regarding the RFO and the modification of a divorce decree, the allegations in the Complaint-in-Interpleader are not seeking the implementation or modification of a divorce decree. This is distinguishable from *Bailey*, where the plaintiff's requested remedy for a modification of the divorce decree was at the core of the domestic relations exception. *See Bailey*, 5 F.4th at 1097; *see also Csibi*, 670 F.2d at 137. The primary issue in this case is determining "the proper party to whom the Policy proceeds are owed and payable" in light of three different scenarios. Compl. ¶ 18. Moreover, whether Nazeera is entitled to the Policy proceeds implicates only one of the three possible scenarios in this action. *Id.* Nazeera's RFO and state court actions are ancillary or overlapping issues to the federal action.[3] Accordingly, this case does not fall within the domestic relations exception.

**B.  Abstention and Stay**

When the domestic relations exception does not apply, the relationship between federal actions and state court actions is more properly considered in the context of abstention.[4] *See Ankenbrandt*, 504 U.S. at 704 (addressing grounds for abstention after

---

[3] In particular, the Court notes that Plaintiff filed the current action on October 11, 2022, and Nazeera did not file the RFO in state court until January 9, 2023.

[4] The parties have not addressed the abstention doctrines in the Motion or related briefings. *See generally* Mot.; Oppo.; Reply. Yet, when there are parallel federal and state suits, especially in interpleader cases, courts will typically consider abstention or staying the action under the different abstention doctrines. *See*, *e.g.*, *Scotts Co. LLC v. Seeds, Inc.*, 688 F.3d 1154, 1158–59 (9th Cir. 2012) (evaluating whether the federal case should be stayed or dismissed in favor of related state proceedings under the *Colorado River* abstention doctrine); *Evans*, 433 F. Supp. 3d at 1177–83 (evaluating whether the federal case should be stayed or dismissed in favor of related state proceedings under the *Colorado River*,

determining that the narrow domestic relations exception does not apply); *Hao v. Chen*, 2010 WL 3910165, at *4 (N.D. Cal. Oct. 5, 2010) ("While such overlap [with divorce proceedings] might, if adequately proven, constitute grounds for abstention, it does not deprive this Court of subject matter jurisdiction.").

The Ninth Circuit has not opined directly on the abstention standard for interpleader actions, but it has clarified that when a case presents both declaratory judgment claims[5] and "claims that exist independent of the request for a declaration," *Colorado River* applies. *Scotts Co. LLC v. Seeds, Inc.*, 688 F.3d 1154, 1158 (9th Cir. 2012) (citations omitted); *see also Cont'l Cas. Co. v. Duyzend*, 2014 WL 34400, at *2–3 (W.D. Wash. Jan. 6, 2014).[6] Some district courts, however, have concluded that *Brillhart* applies to interpleader actions. *See Insalaco v. Fire Ins. Exch.*, 2020 WL 13561583, at *4–6 (N.D. Cal. Dec. 15, 2020) (applying *Brillhart* and *Colorado River* standards to an action commenced under the interpleader statute); *Hachette Book Grp., Inc. v. Windblown Media, Inc.*, 2010 WL 11515247, at *2 (C.D. Cal. Aug. 20, 2010) (holding that the *Brillhart* standard applies to actions commenced under the federal interpleader statute). The Court addresses each standard in turn.

/ / /

---

*Younger*, and *Burford* abstention standards); *Insalaco v. Fire Ins. Exch.*, 2020 WL 13561583, at *4–7 (N.D. Cal. Dec. 15, 2020) (evaluating whether the federal statutory interpleader case should be stayed or dismissed in favor of the related state proceedings under the *Colorado River* and *Brillhart* standards).

[5] Functionally, an interpleader claim resembles one for declaratory relief. *See Insalaco*, 2020 WL 13561583, at *4; *Am. Gen. Life Ins. Co. v. TrustBank*, 2015 WL 12830459, at *3 (D. Ariz. June 15, 2015) ("Effectively, Plaintiff's declaratory judgment claim is an otherwise restated request for interpleader relief.").

[6] Because Plaintiff has been dismissed, the only live claim in this federal action is which party is entitled to the interpleaded Policy proceeds. However, because the Ninth Circuit has not directly opined on which abstention standard applies to interpleader actions, the Court considers the Motion under both the *Brillhart* and the *Colorado River* standard.

### 1. *Brillhart* Standard

"[W]hen a party requests declaratory relief in federal court and a suit is pending in state court presenting the same state law issues, there exists a presumption that the entire suit should be heard in state court." *Chamberlain v. Allstate Ins. Co.*, 931 F.2d 1361, 1366–67 (9th Cir. 1991) (citing *Brillhart v. Excess Ins. Co. of America*, 316 U.S. 491, 495 (1942)). "The pendency of a state court action, however, does not of itself require a district court to refuse declaratory relief in federal court." *Id.* at 1367. In determining whether to grant declaratory relief in a particular case, a district court must "ascertain whether the questions in controversy between the parties to the federal suit, and which are not foreclosed under the applicable substantive law, can better be settled in the proceeding pending in the state court." *Id.* (quoting *Brillhart*, 316 U.S. at 495).

A district court considers the following factors in deciding whether to exercise jurisdiction under *Brillhart*: (1) whether abstention avoids "needless decisions of state law by a federal court"; (2) "whether the Complaint-in-Interpleader constitutes an effort to forum shop"; and (3) "whether dismissal or stay of the Complaint-in-Interpleader would avoid duplicative litigation." *See Hachette Book Grp., Inc.*, 2010 WL 11515247, at *2 (citing *Smith v. Lenches*, 263 F.3d 972, 977 (9th Cir. 2001)).

The first *Brillhart* factor is whether abstention will avoid "needless decisions of state law by the federal court." *Smith*, 236 F.3d at 977; *see also Brillhart*, 316 U.S. at 495 (counseling that a district court should ascertain whether the federal suit "can better be settled in the proceeding pending in state court"). Here, the Complaint-in-Interpleader requests the Court to determine who the Policy proceeds are owed and payable to between the three following scenarios: (1) whether Nazeera Kallel is entitled to the Policy proceeds; (2) whether the "E. Adam Kallel Trust dated November 6, 2019" is the Policy beneficiary, despite the beneficiary of record being the "E. Adam Kallel Trust dated November 6, 2016"; or (3) whether, to the extent the November 11, 2019 beneficiary change is invalid, Monique Pauline Terrazas is the Policy beneficiary. Compl. ¶ 18. Some of the issues and scenarios presented in the federal action, however, are not at issue in the state court actions.

The state court is being requested to determine whether the Policy was a divisible community asset under the Agreement and dissolution judgment and whether the Policy proceeds should be awarded to Nazeera. *See* Gold Decl., Ex. A (Nazeera's RFO in San Diego County Superior Court). However, this Court will have to decide who the Policy proceeds are owed between three potential Policy beneficiaries, and not just whether Nazeera is entitled to the Policy proceeds. *See* Compl. ¶ 18.

The Trust and the Estate argue that there is no risk of interference between the federal and state cases because this Court is only being asked to "enforce an existing and unambiguous division of community property." Oppo. at 11 (emphasis omitted). However, the Trust and the Estate's argument ignores the fact that if this Court were to order the Policy proceeds be allocated to the "E. Adam Kallel Trust dated November 6, 2019" or to Monique Pauline Terrazas and the state court then determined that the same Policy proceeds should be allocated to Nazeera, those judgments would necessarily conflict. Therefore, an action by this Court to determine the allocation of the Policy proceeds may interfere with the state court's responsibility to confirm and allocate marital assets and liabilities. *See H.C. ex rel. Gordon v. Koppel*, 203 F.3d 610, 613 (9th Cir. 2000) ("[A] state has a vital interest in protecting the authority of the judicial system, so that its orders and judgments are not rendered nugatory. This is a particularly appropriate admonition in the field of domestic relations, over which federal courts have no general jurisdiction, and in which the state courts have a special expertise and experience.") (internal quotation marks and citations omitted). At the very least, the state court's intended allocation of the Policy proceeds could be frustrated. Moreover, the Trust and the Estate's argument also fails to acknowledge that while the family law proceeding involves the same parties, it also involves California Family Code sections, California Probate Code sections, and a dissolution judgment that was previously adjudicated in a prior family law proceeding. *See* Mot. at 4; Gold Decl. In short, resolution of the ongoing state court actions will avoid needless resolution of state law claims by this Court. Accordingly, the first factor weighs in favor of Nazeera.

The second *Brillhart* factor is whether the Complaint-in-Interpleader "is a means of forum shopping." *Smith*, 236 F.3d at 977. This action was originally filed by Plaintiff Protective Life, who did not claim any beneficial interest in the Policy proceeds. Compl. ¶ 21. Additionally, since filing the Complaint-in-Interpleader, Plaintiff has been dismissed and the Defendants have remained in the action. Nothing suggests that this case is an attempt to forum shop. Accordingly, the second factor weighs in favor of Nazeera.

The third *Brillhart* factor is whether dismissal or stay of this action avoids duplicative litigation and a waste of judicial resources. *Smith*, 236 F.3d at 977. For the reasons stated above, resolution of the state court actions would assist in resolving this federal action because the state court is specifically being requested to determine whether Nazeera should be awarded all of the Policy proceeds. Accordingly, the third factor weighs in favor of Nazeera, and the Court finds the *Brillhart* factors warrant a dismissal or stay. However, instead of dismissing the action, the Court concludes a stay of the action would be more appropriate. *See Wilton v. Seven Falls Co.*, 515 U.S. 277, 288 n.2 (1995) ("[W]here the basis for declining to proceed is the pendency of a state proceeding, a stay will often be the preferable course, because it assures that the federal action can proceed without risk of a time bar if the state case, for any reason, fails to resolve the matter in controversy.").

### 2. *Colorado River* Doctrine

Under *Colorado River Water Conservation Dist. v. United States*, abstention is potentially warranted where there are concurrent state and federal lawsuits that are substantially similar and where abstention would promote "[w]ise judicial administration, giving regard to conservation of judicial resources and comprehensive disposition of litigation.'" *Colorado River Water Conservation Dist. v. United States*, 424 U.S. 800, 817 (1976) (quoting *Kerotest Manuf. Co. v. C-O-Two Fire Equip., Co.*, 342 U.S. 180, 183 (1952)). Even where there are parallel federal and state suits, *Colorado River* abstention should be invoked only in "exceptional circumstances." *Nakash v. Marciano*, 882 F.2d 1411, 1415 (9th Cir. 1989) (quoting *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 19 (1983)).

Under the *Colorado River* doctrine, courts generally evaluate eight factors in assessing whether "exceptional circumstances" warrant federal abstention from concurrent federal and state proceedings: (1) whether either court has assumed jurisdiction over the property at stake; (2) the relative convenience of the forums; (3) the desire to avoid piecemeal litigation; (4) the order in which the forums obtained jurisdiction; (5) whether state or federal law controls; (6) whether the state proceeding is adequate to protect the parties' rights; (7) the desire to avoid forum shopping; and (8) whether the state court proceedings will resolve all issues before the federal court. *Seneca Ins. Co., Inc. v. Strange Land, Inc.*, 862 F.3d 835, 841 (9th Cir. 2017). "The threshold question in deciding whether *Colorado River* abstention is appropriate is whether there are parallel federal and state suits." *ScripsAmerica, Inc. v. Ironridge Glob. LLC*, 56 F. Supp. 3d 1121, 1147 (C.D. Cal. 2014) (internal quotation marks and citation omitted). The Supreme Court has stated that a stay or dismissal under the *Colorado River* doctrine would be a "serious abuse of discretion" unless "the parallel state-court litigation will be an adequate vehicle for the complete and prompt resolution of the issues between the parties." *Moses H. Cone Mem'l Hosp.*, 460 U.S. at 28.

Here, as stated above, it is unclear whether the state court actions will resolve this federal case because the state court actions may only resolve Nazeera's potential claim to the Policy proceeds. Indeed, a dismissal or stay is not appropriate under these circumstances. *Id.* (stating the decision "to invoke *Colorado River* necessarily contemplates that the federal court will have nothing further to do in resolving any substantive part of the case, whether it stays or dismisses."). "[A] district court may enter a *Colorado River* stay order only if it has 'full confidence' that the parallel state proceeding will end the litigation." *Intel Corp. v. Advanced Micro Devices, Inc.*, 12 F.3d 908, 913 (9th Cir. 1993) (quoting *Gulfstream Aerospace Corp. v. Mayacamas Corp.*, 485 U.S. 271, 277 (1988)). As the Court does not have "full confidence" that the state cases will resolve the parties' entitlement to the Policy proceeds between the three scenarios, a stay or dismissal

would be inappropriate under *Colorado River* and the Court need not reach the remaining *Colorado River* factors.

Regardless of whether *Colorado River* applies, the Court ultimately determines that a stay of this case is appropriate under *Brillhart*. Where, as here, *Brillhart* applies, "an order merely staying the action does not constitute abnegation of judicial duty. On the contrary, it is a wise and productive discharge of it. There is only postponement of decision for its best fruition." *Gilbertson v. Albright*, 381 F.3d 965, 975 (9th Cir. 2004) (quoting *Quackenbush v. Allstate Ins. Co.*, 517 U.S. 706, 721 (1996)). Moreover, "[e]ven in the cases applying *Brillhart* abstention to interpleader actions, the federal interpleader action is often only stayed until liability is determined in the pending state action and the funds frozen in the federal court's registry can be disbursed." *See Cont'l Cas. Co.*, 2014 WL 34400, at *3.

## IV.   CONCLUSION

For the foregoing reasons, the Court **DENIES** Defendant Nazeera Kallel's Motion to Dismiss and **GRANTS** Defendant Nazeera Kallel's Motion to Stay the Action. This action is **STAYED** pending the resolution of the San Diego County Superior Court proceedings. The parties shall file joint status report regarding the status of the San Diego County Superior Court proceedings every ninety (90) days, with the first status report due on **April 17, 2024**.

**IT IS SO ORDERED.**

Dated: January 18, 2024

_____
Honorable Linda Lopez
United States District Judge